IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF KANSAS


ANGELA GLAZE,

                    Plaintiff,

vs.                                      Case No. 13-2129-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


                       MEMORANDUM AND ORDER

   This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

   The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On January 11, 2012, administrative law judge (ALJ) Sharilyn Hopson issued her decision (R. at 10-22). Plaintiff alleges that she had been disabled since July 15, 2008 (R. at 10). Plaintiff is insured for disability insurance benefits through September 30, 2010 (R. at 12). At step one, the ALJ

found that plaintiff did not engage in substantial gainful activity from July 15, 2008 through September 30, 2010 (R. at 12).  At step two, the ALJ found that plaintiff had the following severe impairments:  morbid obesity, fibromyalgia, major depressive disorder, and anxiety without agoraphobia (R. at 12)).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13).  After determining plaintiff's RFC (R. at 16), the ALJ determined at step four that plaintiff is able to perform past relevant work as an office clerk (R. at 21).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22).

**III.  Did the ALJ err in her evaluation of the opinions of treatment providers?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical

source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still

6

entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. <u>Watkins</u>, 350 F.3d at 1301.

On February 23, 2011, plaintiff's treating psychiatrist, Dr. Carolina, prepared a medical source statement stating that plaintiff was markedly limited in 4 out of 20 categories, and was extremely limited in 6 other categories (R. at 393-395). The ALJ stated that Dr. Carolina's opinion relies upon the claimant's own reports of her limitations and not upon clinical observations or signs. The ALJ further asserted that psychological test results established that the claimant is not as limited as alleged by Dr. Carolina. For these reasons, the

ALJ accorded only "slight" weight to Dr. Carolina's opinions (R. at 20).  The ALJ further noted that Dr. Matzeder, a psychologist, performed a consultative examination, and that objective psychological testing formed the basis of her opinions; thus, her opinions were accorded "great" weight.

First, the ALJ asserts that Dr. Carolina's opinions rely upon plaintiff's own reports of her limitations and not upon clinical observations or signs.  In the case of <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." <u>Id</u>. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." <u>Id</u>. at 1253.

8

Subsequently, in the case of <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. <u>See</u> <u>Langley</u>, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the record for the ALJ's conclusion. Nothing in Dr. Covington's report indicates that he based his opinion on claimant's subjective complaints, and the ALJ's finding ignores all of Dr. Covington's examinations, medical tests, and reports. Indeed, the ALJ's discussion of Dr. Covington omits entirely his March 22, 2001 examination and report. His April 3, 2001 statement might well have been based on his recent first-hand examination and observation of claimant during this examination, performed less than two weeks earlier, rather than on claimant's subjective complaints, as the ALJ speculated. <u>See</u> <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir.2000) (noting that the treating physician's opinion may "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

121 Fed. Appx. at 823-824.

As <u>Langley</u> makes clear, the ALJ must have a legal or evidentiary basis for asserting that a medical source report was based on plaintiff's subjective complaints.  However, the ALJ did not cite to either a legal or evidentiary basis for his assertion that Dr. Carolina's opinions were based on plaintiff's subjective complaints.  In fact, Dr. Carolina performed a

9

psychiatric evaluation/mental status examination on plaintiff on February 23, 2011, the same day that Dr. Carolina prepared the medical source statement (R. at 415). Dr. Carolina had performed other evaluations/examinations of plaintiff on September 27, 2010, October 12, 2010, November 9, 2010, and December 1, 2010 (R. at 403-404, 407, 408, 412). As the court stated in Victory, Dr. Carolina's assessment might well have been based on her first-hand examination and observation of the plaintiff during the psychiatric evaluation/mental status examination on the day of the assessment and on earlier occasions, rather than on plaintiff's subjective complaints, as the ALJ speculated.

Furthermore, the practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. Thomas v. Barnhart, 147 Fed. Appx. 755, 759-760 (10th Cir. Sept. 2, 2005); Miranda v. Barnhart, 205 Fed. Appx. 638, 641 (10th Cir. Aug. 11, 2005). A psychological opinion may rest either on observed signs and symptoms or on psychological tests. Langley v. Barnhart, 373 F.3d 1116, 1122 (10th Cir. 2004); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). The ALJ cannot reject a psychologist's opinion solely for the reason that it was based on a claimant's responses because such rejection impermissibly substitutes the ALJ's

judgment for that of the psychologist. Thomas, 147 Fed. Appx. at 760; Miranda, 205 Fed. Appx. at 641.

Second, the ALJ gave greater weight to the opinions of Dr. Matzeder because of her "objective" psychological testing, and gave less weight to the opinions of Dr. Carolina because the psychological test results (presumably those of Dr. Matzeder) did not establish that plaintiff was as limited as Dr. Carolina opined. Dr. Matzeder's report indicates that Dr. Matzeder interviewed and performed a mental status examination of the plaintiff (R. at 308-311). Dr. Carolina also performed a mental status examination/psychiatric evaluation on the plaintiff on February 23, 2011 (R. at 415), and on previous dates, as noted above. The tests that were mentioned by Dr. Matzeder were those for attention and concentration, memory, abstractions and intellectual functioning, and insight and judgment (R. at 310). The tests performed by Dr. Matzeder did not address many of the limitations contained in Dr. Carolina's report, including her ability to maintain attention and concentration for extended periods, being able to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, or the ability to complete a normal workday and workweek and perform at a consistent pace without an unreasonable number and length of rest periods. Furthermore, Dr. Matzeder did not offer any opinions regarding the nature and

11

extent of plaintiff's limitations in most of the categories contained in Dr. Carolina's report. Therefore, the evidence does not support the ALJ's assertion that psychological test results do not support the limits set forth by Dr. Carolina. For these reasons, the case shall be remanded in order for the ALJ to give further consideration to the opinions of Dr. Carolina.

The record also contains a medical source statement, dated December 17, 2011, from Ms. Boal, a treatment source who has seen plaintiff in a professional capacity (R. at 20). Ms. Boal found that plaintiff was not significantly impaired in 2 categories, moderately impaired in 8 categories, markedly impaired in 8 categories, and extremely impaired in 2 categories (R. at 482-484). Ms. Boal noted in her report that she had not known plaintiff on or before September 30, 2010 (R. at 484). The ALJ stated that the opinions of Ms. Boal noted that their relationship was not long-standing and that some of the opined limitations were due to plaintiff's physical impairments, which Ms. Boal did not treat. Thus, the ALJ accorded only slight weight to her opinions (R. at 20).

Although the opinions of Dr. Carolina and Ms. Boal disagree on many particulars, both agree that plaintiff is extremely limited in her ability to: (1) perform activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances, and (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (R. at 394, 483). An ALJ must not consider the opinions of one treating or examining source in isolation, but his opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of other treating or examining sources.  The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of other medical treating or examining sources, and the need for the ALJ to take this into consideration.  See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005). On remand, the ALJ should take into consideration the fact that both treating professionals found plaintiff markedly or extremely limited in numerous categories.

     The record also contains a medical source statement from Dr. Ruhlman, who opined on March 10, 2011 that plaintiff could only work for 2 hours a day; he further opined that plaintiff could only stand for 60 minutes in a workday and sit for 2 hours in a workday.  He also opined that plaintiff could never bend or stoop (R. at 424).  The ALJ stated that, according to Dr.

13

Landau, Dr. Ruhlman's opinions express limitations absent from the treatment records (R. at 21).

However, a review of Dr. Landau's testimony does not establish that he stated that Dr. Ruhlman's opinions express limitations absent from the treatment records (R. at 54-61). In fact, Dr. Landau did not directly comment on Dr. Ruhlman's opinions; he simply noted that he had seen Exhibit 21F which contains the opinions of Dr. Ruhlman (R. at 59). Dr. Landau testified that there was no objective evidence of her disease in the record, but also testified that there are no objective findings of fibromyalgia, other than trigger points (R. at 60). Dr. Landau testified that he agreed with the diagnosis of fibromyalgia (R. at 61). Dr. Landau never discussed or evaluated the opinions of Dr. Ruhlman. The testimony of Dr. Landau does not support the ALJ's assertion that Dr. Landau stated that Dr. Ruhlman's opinions express limitations that are absent from the treatment or medical records. Therefore, this case should be remanded in order for the ALJ to reevaluate the opinions of Dr. Landau and Dr. Ruhlman, and provide a legally sufficient basis for the weight assigned to the opinions of Dr. Ruhlman, a treating physician.

In their brief, defendant sets forth the argument that Dr. Ruhlman's opinion was inconsistent with the record, and then noted various inconsistencies (Doc. 13 at 8-9). However, these

arguments were not made by the ALJ in her opinion as a basis for discounting the opinions of Dr. Ruhlman. An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

**IV. Did the ALJ err by not evaluating whether sleep disorder was a severe impairment at step two and in considering plaintiff's obesity?**

Although the ALJ did not mention sleep disorder at step two, Dr. Landau testified that one of the manifestations of fibromyalgia is sleep disturbance (R. at 59). The court finds no error because it was not mentioned as a severe impairment at step two in light of the finding that plaintiff had a severe impairment of fibromyalgia.

**IV. Did the ALJ err in her evaluation of plaintiff's obesity?**

At step two, the ALJ found that plaintiff's severe impairments included morbid obesity (R. at 12). The ALJ noted that the medical expert, Dr. Landau, testified that plaintiff was morbidly obese, noting her weight and body mass index (R. at 18, 56). The ALJ then gave great weight to the opinions of Dr. Landau. The court finds no error in the ALJ's consideration of plaintiff's obesity.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 6th day of August 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge